IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  06-10235-01-WEB |
| ) | |
| DEREK HUBBARD, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**Memorandum and Order**

This matter came before the court on January 8, 2007, for a hearing on defendant's Motion to Suppress DNA Evidence.  At the hearing the parties agreed the relevant facts were undisputed and that the court could decide the motion based upon the parties' briefs. Counsel for the defendant requested a further opportunity to submit a Reply Brief, which the court granted.  Defendant's Reply Brief has now been filed.  Having reviewed the briefs and the materials related to the motion, the court is now prepared to rule.

I.  *Facts*.

The following facts are taken from defendant's Memorandum in Support. (Doc. 23). Additionally, defendant's Exhibits A and B (Application and Affidavit for Search Warrant; and Search Warrant with Return) are incorporated by reference.

1. On or about November 27, 2006, Special Agent Christopher Straub completed and presented to the Court an Application and Affidavit for Search Warrant, Case No. 06-M-180-01-DWB. (Exh. A).

2. In the affidavit which accompanied the government's application, Agent Straub, in

separate numbered paragraphs, under oath, *inter alia* advised the court as follows:

> 1. That he was an a Special Agent of the Federal Bureau of Investigation, and that he had experience in investigating at least four areas of violation of federal criminal laws.
> 2. That the information contained in his affidavit was known to him personally, or was relayed to him by others.
> 3. That an investigation had been conducted by the Wichita Police Department on October 13, 2006, arising out of a domestic disturbance.
> 4. That as a result of the investigation, Derek Hubbard was taken into custody by the Wichita Police Department.
> . . .
> 9. That on October 18, 2006, a True Bill Indictment was issued by a federal Grand Jury charging Derek Hubbard with several violations of the criminal laws of the United States.
> 10. That the Affiant believed "that samples of Hubbard's saliva are necessary to establish a known source for an accurate scientific comparison with evidence obtained during the investigation." He also advised that, if he intended to use the least obtrusive means necessary to secure the saliva, but he sought permission to physically restrain, Hubbard, if necessary, for a period of time sufficient to obtain samples.

3. On that same date, and as a direct result of the government's application, United States Magistrate Judge Donald W. Bostwick, issued a Search Warrant, Case No. 06 M-6180-10-DWB. (Exh. B).

4. The Search Warrant authorized the government to seize "[d]eoxyribonucleic acid (DNA) in the form of saliva cells of Derek Hubbard to be recovered by means of a buccal swab of the inside of the mouth."

5. The Return of the Search Warrant reveals that the government seized six buccal swabs of material from the defendant Derek Hubbard.

6. Absent from the Application and Affidavit for Search Warrant was any mention of

this present and pending criminal proceeding.[1]

7. Equally absent from the Application and Affidavit for Search Warrant was any mention of the fact that Mr. Hubbard was and is represented by counsel, and that the government knew Mr. Hubbard was represented by counsel when it made its application for the search warrant.

8. Also absent from the Application and Affidavit for Search Warrant was the fact that the government had not attempted to use other means to secure this evidence from the defendant.

9. Mr. Hubbard's counsel was not made aware of the government's application for the Search Warrant.

10. Mr. Hubbard's counsel was not made aware that the Search Warrant had been issued.

11. Mr. Hubbard's counsel was not advised of the date and time that the Search Warrant was to be executed, and counsel was not present when the Warrant was executed.

12. The Search Warrant was served upon the defendant and samples of his DNA were taken on November 27, 2006, at 12:18 p.m.

II. *Motion to Suppress*.

Defendant contends government agents violated his Sixth Amendment right to the assistance of counsel by obtaining a DNA sample from him without notifying his counsel or allowing his counsel to be present. He notes that the right to counsel extends beyond the trial itself to situations where "the results of the confrontation 'might well settle the accused's fate and reduce the trial itself to a mere formality.'" Doc. 23 at 5 (*citing United States v. Wade*, 288 U.S. 218, 224 (1967)). Defendant complains he was "compelled to stand alone against the government and its agents at a

---

[1] This criminal proceeding was not specifically identified by case name and number in the affidavit, however the affidavit did disclose that a grand jury indictment was returned on October 18, 2006, charging defendant with two violations of 18 U.S.C. § 922(g)(1), two violations of and 924(c), and one violation of of 21 U.S.C. § 841(a)(1). Doc. 23, Exh. A, p. 4, ¶ 9.

stage of the proceeding, although informal, where his counsel's absence might derogate from his right to a fair trial." Doc. 23 at 6. Defendant argues it is "equally troubling" that the agents could have avoided the alleged violation simply by filing a motion with the court and by providing notice thereof to defense counsel, and he argues the court should "exercise its supervisory powers" by suppressing the results of the DNA search and any evidence generated from it.

The Government argues in response that the taking of a DNA sample is not a critical stage of the proceedings and the right to counsel therefore does not apply. It notes that in *Wade* the Supreme Court found an-person lineup to be a critical stage (because factors that could affect the reliability of a witness identification might go unnoticed by the accused), but the Court simultaneously found in *Gilbert v. California*, 388 U.S. 263 (1967) that obtaining a handwriting exemplar was not a critical stage. As the Government points out, the *Gilbert* Court observed that if an unrepresentative handwriting exemplar were taken, that fact could be brought out and corrected through the adversary process because the accused could make an unlimited number of additional exemplars for analysis by government and defense experts. Doc. 27 at 2. The Government argues that obtaining DNA through buccal swabs is more akin to taking handwriting exemplars, such that the court should find that obtaining the DNA sample did not violate the defendant's Sixth Amendment right to counsel. *Id*. at 3 (*citing Rose v. Texas*, 711 S.W.2d 89 (Tex.App. 1986)).

III. *Discussion*.

The Sixth Amendment provides in part that in all criminal prosecutions, the accused shall enjoy the right to the assistance of counsel for his defense. Thus, following indictment or other formal charge, a defendant is guaranteed the presence of counsel at trial, as well as at "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218, 226 (1967). In *Wade* the

Court held that a post-indictment, in-person lineup was a critical stage of the proceedings requiring the presence of counsel. In so finding, the Court said that in determining what is a critical stage the courts must scrutinize the pretrial confrontation "to determine whether the presence of counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon [the court] to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id.* at 227.

Applying this standard to the circumstances of a pre-trial lineup, the *Wade* Court noted a number of factors contribute to a high potential for prejudice. It found that mistaken identifications were a common occurrence, that lineups were susceptible to improper influences or suggestion, and that once a witness has identified an accused he is naturally reluctant to "go back on his word" later on. *Id.* at 229. Additionally, any improper influences are likely to go undetected by the accused and by witnesses, such that protestations of unfairness at trial are likely to be in vain. *Id.* at 230. "In short, the accused's ability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification." *Id.* at 231. The *Wade* Court distinguished such lineups, however, from preparatory steps in the gathering of the Government's evidence "such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair and the like":

> We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of his own experts. The denial of a right to have his counsel present at such

>analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial.

*Id*. at 227-28.

As the Government points out, in *Gilbert v. California*, 388 U.S. 263 (1967) the Supreme Court made short shrift of a defendant's argument that the taking of a handwriting exemplar in the absence of counsel violated his Sixth Amendment rights. The Court said there was minimal risk that the absence of counsel would undermine a fair trial:

>If, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for analysis and comparison by government and defense handwriting experts. Thus, 'the accused has the opportunity for a meaningful confrontation of the (State's) case at trial through the ordinary processes of cross-examination of the (State's) expert (handwriting) witnesses and the presentation of the evidence of his own (handwriting) experts.

*Id*. at 267.

The taking of a DNA sample by buccal swab is clearly more analogous to the taking of a handwriting exemplar than to a pre-trial lineup. Like the "scientific tests" alluded to in *Wade*, knowledge of the techniques for gathering (and analyzing) DNA samples is sufficiently available that a defendant can meaningfully challenge deficiencies in the procedures used by means of cross-examination of government or defense experts at trial. The gathering of such evidence is a rather straightforward matter typically conducted pursuant to established standards or practices, and it should not be difficult at trial to reconstruct the circumstances used in the procedure. *Cf. Wade*, 388 U.S. at 239, n.30 ("[t]he more systematic and scientific a process or proceeding, ... the less the impediment to reconstruction of the conditions bearing upon the reliability of that process or proceeding at trial."); *United States v. Ash*, 413 U.S. 300, 316 (1973) ("If accurate reconstruction

is possible, ... the opportunity to cure defects at trial causes the confrontation to cease to be 'critical.'"). Nothing is presented to show why cross-examination at trial is insufficient to protect a defendant's right to challenge the reliability of the procedure.[2] And like the handwriting exemplar in *Gilbert*, if there is some reason to suspect the reliability of a particular DNA sample or test in the first instance, the accused can provide an unlimited number of samples for subsequent analysis and testing.[3] In sum, the taking of a DNA sample without counsel present is unlikely to result in irreversible prejudice of the sort implicated by a suggestive or otherwise improper lineup. The court thus concludes that the taking of the buccal swabs from the defendant was not a critical stage of the proceeding and did not violate his Sixth Amendment right to the assistance of counsel. *See Harper v. Roache*, 52 F.3d 337, 1995 WL 231827, Unpublished (10th Cir., Apr. 19, 1995) (rejecting plaintiff's civil rights claim because the right to assistance of counsel did not extend to having counsel present during collection of hair and blood samples pursuant to valid search warrants); *United States v. Pridgen*, 41 Fed.Appx. 103, 105 (9th Cir. 2002) (physical taking of hair and saliva samples outside the presence of counsel did not violate Sixth Amendment); *United States v. Maceo*,

---

[2] Defendant argues his right to fair trial may be hampered because "[t]he government may well contend that Mr. Hubbard made statements which would be admissible against him." Doc. 33 at 3. This assertion is speculative given that the undisputed facts contain no such allegation. Moreover, the court's ruling on the instant motion does not preclude defendant from challenging any attempt by the government to introduce evidence of statements made by the defendant during the collection of his DNA. *Cf. Massiah v. United States*, 377 U.S. 201 (1964) (Sixth Amendment violated if agents deliberately elicit incriminating statement from defendant in the absence of counsel after indictment). *See also Patterson v. Illinois*, 487 U.S. 285 (1988) (Sixth Amendment right to counsel may be waived).

[3] Defense counsel points out that in *Gilbert* the defendant had not been charged or appointed an attorney at the time the handwriting exemplar was provided, and he argues this distinguishes *Gilbert* from the instant case. In *Gilbert*, however, the Supreme Court set these facts aside and proceeded to address the lack of prejudice from the confrontation. *See Gilbert*, 388 U.S. at 267 ("Putting aside the fact that the exemplars were taken before indictment and appointment of counsel, there is minimal risk that the absence of counsel might derogate from his right to a fair trial.").

873 F.2d 1, 5 (1st Cir. 1989) (pre-trial examination of defendant's teeth and gums not a critical stage; no danger of the "subtle influences" present in pretrial lineups); *Yusov v. Martinez*, 2000 WL 1593387 (S.D.N.Y., Oct. 24, 2000) ("Defendants were simply not required to take a sample of plaintiff's DNA in the presence of counsel."); *State v. Blye*, 130 S.W.3d 776 (Tenn.Sup. Ct 2004) (citing numerous cases for the proposition that obtaining a search warrant to obtain blood sample from defendant is not a critical stage entitling defendant to counsel); *State of Texas v. Mata*, 30 S.W.3d 486 (Tex.App.-San Antonio, 2000); *Wilson v. Commonwealth*, 2006 WL 1458140 (Va.App. 2006).

The court further finds that suppression of the DNA results is not authorized or appropriate under the court's supervisory power. Defendant argues that government agents obtained a search warrant as part of "an elaborate ruse" to allow the agents to confront the defendant in the absence of his counsel. But as the above discussion indicates, there is no Sixth Amendment right to have counsel present during the taking of a DNA sample. Moreover, the Government's legitimate resort to a judicially authorized warrant to gather evidence bears no resemblance to the sort of prosecutorial misconduct or "willful disobedience of law" that might justify an exercise of the court's supervisory power. *See United States v. Payner*, 447 U.S. 727, 734-35 (1980).

IV. *Conclusion*.

Defendant's Motion to Suppress DNA Evidence (Doc. 22) is DENIED. IT IS SO ORDERED this  16th  Day of January, 2007, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge